Bray *v.* Farwell.

---

EDWARD P. BRAY, President, &c., Appellant, *v.* JOHN V. FARWELL, Respondent.

(GENERAL TERM, FIRST DEPARTMENT, FEBRUARY, 1871.)

Where the articles of association of an unincorporated joint stock company provide that the board of directors thereof may prosecute and recover, in an action at law, any and every assessment upon the shares of stock, — *Held*, that an action against one of the associates, to recover an assessment upon his stock, may be maintained in the name of the president of the association.

It seems, that such an agreement between mere partners, would estop one of the partners from objecting to a suit, upon the agreement, in behalf of the partnership.

THIS was an appeal from a judgment entered on the report of a referee, dismissing the plaintiff's complaint, as not stating a cause of action.

The plaintiff, as president of the Butterfield Overland Dispatch Company, a joint stock company, under the laws of the

Bray *v.* Farwell.

State, consisting of seven or more shareholders, sued the defendant, as one of the associates, to recover an assessment duly made upon his shares of stock by the board of directors of the association, for the purpose of raising the necessary funds to meet liabilities for debts incurred in the prosecution by the company of its legitimate business; and the complaint set forth the necessary allegations to charge him in that respect, and also set forth the articles of association at length, of which article third was as follows, viz.:

"Article 3. And the joint associate parties to these presents hereby mutually covenant and agree to and with each other, each for himself and his legal representatives, to and with all the others, to pay $100 per share for each and every share by him subscribed to the capital stock of the association hereby constituted, or of which he may become the owner or holder; one-fourth part thereof on making such subscription, and the balance in installments, on call of the directors hereinafter named; and also to pay and fully discharge any and all assessments which the directors hereinafter named are authorized to make, and which they may at any time hereafter make, in accordance with the provisions herein contained; and, further, that, in the case of the refusal or neglect of any shareholder in this association to pay and discharge any of the installments above mentioned, or any assessment or assessments, or any portion thereof, the share or shares of said stocks so in default may be taken, set apart and sold; and said board of directors are hereby especially authorized to take and set apart, advertise and sell the same, as hereinafter provided. It being hereby, however, expressly understood and agreed, that said board of directors may, at their option, prosecute and recover, by a suit at law, any and every installment upon the shares hereinafter mentioned, and also any and every such assessment or assessments."

*Joshua M. Van Cott,* for the appellant.

It results from the admitted facts that the defendant is liable to pay the $4,000 assessed upon his shares.

Bray *v.* Farwell.

As between themselves, the shareholders are liable to pay the debts of the association (and that irrespective of the time when they became associates, and of the time when the debts were contracted. (*Savage* v. *Putnam*, 32 N. Y. R., 501–506; *Story* v. *Furman*, 25 id., 221 ; *Wright* v. *Delafield*, id., 266).

It was competent for them to agree, and to provide, in their fundamental articles, when and how such contribution should be assessed and its payment enforced.

It was most essential to the well being of the association, to the protection of the associates, as between themselves, and to the just security and satisfaction of its creditors, that they should agree upon a mode of making assessments, and enforcing contribution to pay debts.

The associates did agree to make such contribution, whenever it became necessary to pay debts ; that the directors might assess them equally in the proportions of the stock held by them; and that such assessments might be enforced by a suit at law, by the company, in the name of its president.

All the stipulations to contribute equally to pay capital, and to pay debts, as called for, inured to the whole association ; and the right of action to enforce those calls to pay up capital, and to pay debts, is vested in the association, and not in some associates against others.

That agreements between partners, in their fundamental articles and in many other cases, may be enforced at law, *for the benefit of the partnership.* (See *Cross* v. *Jackson*, 5 Hill, 479; *Townsend* v. *Galway*, 19 Wend., 424; *Cole* v. *Reynolds*, 18 N. Y., 76; *Habicht* v. *Pemberton*, 4 Sandf. S. C. R., 657.)

The directors are trustees of an express trust, and as such might maintain this action. (Code § 113, and notes; *Considerant* v. *Brisbane*, 22 N. Y., 389 ; Lindley on Partn., 718 to 724.)

The plaintiff is a director, and the non-joinder of his co-trustees should have been pleaded in abatement or made the ground of a special demurrer. (Code, §§ 144, 146, 147, 148;

*Patchin* v. *Peck,* 38 N. Y., 39 ; *Zabriskie* v. *Smith,* 13 id., 322.)

But the plaintiff is estopped, by his agreement in the articles of association, to object to the prosecution of the action for the company in the name of its president. It is not true, as claimed by the defendant, that the agreement relates only to suits against third parties. Two considerations are fatal to that construction : 1st. The New York act of 1849 (chap. 258), gave the right of action in the name of the president against third parties. 2d. The associates *could not* confer such a right of action against third parties by an agreement between themselves. To give any effect to the agreement of the associates, it is necessary to construe it to apply to suits between the company and themselves, and especially to the only suits specifically referred to in the articles of association.

The right to sue in the name of the president is expressly given by the New York act of 1849, *supra,* relative to joint stock companies. That act endows joint stock companies with a "*juridical personality.*"

The fundamental doctrines as to parties, generally speaking, do not depend upon positive law, but are formulated by the courts in furtherance of justice. The most important rules are reduced to two : 1st. That no man's rights shall be adjudged without giving him a day in court to be heard. 2d. That to avoid a multiplicity of suits and end litigation, all parties interested in the matter under adjudication shall, as far as practicable, be heard in one suit, that the matter may be finally determined.

This suit may be determined between the present parties, without impeachment of either of these fundamental rules. No account between the associates can, in the nature of things, be involved ; and no associate can have any unrepresented and individual interest in the question whether the defendant is or is not liable for his assessment ; a judgment in the case, one way or the other, will conclude the question.

The reason (irrespective of the state of the accounts) why partners, as such, cannot ordinarily enforce firm liabilities by

and against each other at law, is mostly metaphysical, that is the ideal incongruity of a partner being in name or effect both plaintiff and defendant in a suit.    Another reason, having more substance, is, that if a pecuniary judgment is ren dered against a partner he may pay the amount to himself and discharge it, so that no substantial result is attained by the suit.

But whatever force the latter reason may have in an ordinary case, it can have none in this; for here, none but the managing partners, the directors, can receive satisfaction and discharge the judgment.

The judicial reason why a firm cannot sue its members, and why a corporation can, is, that the firm, as such, has not a *legal personality* distinct from that of its members; whereas a corporation has such a distinct legal personality.    This distinction is artificial and does not prevail on the continent of Europe, or under the civil law, though it is deeply imbedded in the common-law.

In respect of unchangeability by a change of its members, management of the business, title to property, and prosecution of actions for and against shareholders, joint stock companies are corporations, and are subject to the *regimen* of corporations, under the joint stock company acts. (Laws of 1849, chap. 258, p. 389; id., 1851, chaps. 455, 838; id., 1853, chaps. 153, 283; id., 1854, chaps. 245, 558; id., 1867, chap. 289, p. 576; id., 1868, chap. 290, p. 599; id., 1869, chap. 157, p. 274; id., 1870, chap. 151, p. 421.)

Joint stock companies are not " full corporations," but are corporations to the extent to which they are endowed with corporate attributes by the legislature, and to that extent they have a *legal personality.*    Section 5 of the act of 1849 declares that " nothing herein contained shall be construed to confer on the joint stock companies or associations mentioned in the first section of this act any of the rights or privileges of corporations, *except as herein specially provided.*" (*Waterbury* v. *The Merchants' Union Express Co.*, 50 Barb., 157; *Sanford* v. *Supervisors of N. Y.*, 15 How. Pr., 172; *Oliver*

v. *London and Liverpool L. and F. Ins. Co.*, 100 Mass., 531; *Same Case*, Sup. Ct. U. S., MS.; Lindley on Partn., 718–721; Broom on Parties.)

The second section of the act of 1850 (chap. 172), prohibiting the defence of usury by corporations, declares: "The term corporation, as used in this act, shall be construed·to include all associations and joint stock companies having any of the powers and privileges of corporations not possessed by individuals or partnerships."

In the article on corporations, submitted by the.late constitutional convention (art. 10, § 3), the definition of corporations contained in the act of 1850 was adopted literally: "The term corporation, as used in this article, shall be construed to include all associations and joint stock companies having any of the privileges or powers of corporations not possessed by partnerships or individuals."

The law of limited partnerships recognizes the distinct individuality of the special partner; vesting the title to partnership property in the managing partners (*Harris* v. *Murray*, 28 N. Y., 576), and authorizing the special partner to sue for money loaned to the firm. (Laws of 1856, chap. 414, § 3, which gives the special partner "the same rights and remedies in these respects as any other creditor might have.")

It is clear, on the principle enunciated in *Harris* v. *Murray*, that a judgment against a shareholder in a joint stock association cannot be executed upon the associate property.

Liability of shareholders, or exemption from liability, has ceased to be a legal test of the corporate character of an asso ciation. In many corporations the shareholders are individually liable; in many unincorporated joint stock companies, the liability of the shareholders is limited.

The English and American acts originated in a common necessity, and were devised to remedy common evils. One of the principal evils sought to be removed was the want of a legal personality in the joint stock company, and its consequent inability to sue its members and be sued by them. The acts bestow upon them that legal personality; and their *per-*

*sona standi in judicii*, to sue and be sued by their members, had been maintained in the English courts long before the year 1849.

Lord ELDON, in 1826, pointed out, historically, the rise of joint stock companies, and the evils it required legislation to remove. (*Van Sandan* v. *Moore*, 1 Russell, 458–460.) He closes his enumeration of those evils thus: " One thing was still wanting. If the members of these bodies happened to quarrel among themselves (which, though they came harmoniously together, was very likely to happen), how were they to sue one another ? And it was not till the latest stage of improvement that that difficulty was provided for. I believe it was in the act regulating the new banking establishments in Ireland that provisions were for the first time made to meet all these difficulties ; and similar provisions now form part of the regulations which are likely to take place in the banking establishments in England now in contemplation." (See 7 Geo. IV, chap. 46, § 9, Banking Cos. Act, passed 1826, Shelford's Joint Stock Cos., p. 370 ; 7 Will. IV, and 1 Vict., chap. 73, § 3, passed 1837, Companies' Act, Shelford, p. 388 ; Lindley on Partner, 718–721, 745, and cases cited in notes ; 2 House L. Cas., 520, 521 ; *Burnes* v. *Pennell*, L. R., 5 Chancery App., 725, *Baird's Case.*)

There are no special circumstances to withdraw this case from the operation of the joint stock companies' act of 1849.

In the nature of things, there can be no case for an accounting, as between partners.

The original contribution to pay capital was necessarily equal.

The division of profits, where dividends are made, is equal.

There are no dealings between the shareholders, or between shareholders and the association, producing a debit and credit account.

The calls the directors are authorized to make are equal.

In the absence of special circumstances, which are not alleged, there is no presumption that any state of facts can

exist to exempt a shareholder, on whom an assessment is imposed to pay debts, from liability to contribute the equal proportion and per centage called for.

The facts alleged in the complaint, and offered to be proved before the referee, brought the defendant's liability precisely within the articles of association, and within the general principles on which he was bound to make contribution. The plaintiff was, therefore, entitled to judgment for the amount of the call.

*W. Stanley*, for the respondent.

The judgment dismissing the complaint, on the ground that it did not show a cause of action in the plaintiff, was correct, and should be affirmed.

The suit is, in legal effect, an action by all the members of a firm against one of the members of the same firm. Such an action cannot be maintained unless some act of the legislature expressly authorizes it. (Lindley on Partnership, 1st ed., pp. 167, 168, 400, 401, 718; 2d ed., pp. 213–217, 488, 495, 496, 497, 509, 857, 859; *Nash* v. *Russell*, 5 Barb., 556; *Warren* v. *Stevens*, 19 Pick., 73; *Hybart* v. *Parker*, 4 Common Bench, N. S., 209.)

The action is sought to be maintained under the act of 1849. (3 R. S., 5th ed., chap. 258, § 1, p. 777.) But that act makes the president, for the time being, the representative of all the associates; and a suit brought in his name is, in legal effect, a suit by all the associates individually, the sole object of the statute being to avoid the inconvenience of making a great number of associates parties to every suit by or against the association. It is perfectly plain, that, by the statute, the president has no right to sue when all the partners have no such right.

In a case which underwent great consideration (*Corning, President, etc.,* v. *Greene*, 23 Barb., 33), Judge WRIGHT delivering the opinion of the General Term, and adverting to the act of 1849 and the amendatory act of 1851 (chap. 455, p. 43), said: "These statutes conferred upon the plain-

tiff no right to sue, except in cases where the shareholders or associates could before have prosecuted. Their intent was to obviate the inconvenience of joining all the shareholders and associates as parties, to facilitate an existing right of action, and not to create a new one." The question is not, therefore, open to consideration at General Term, whatever might be the opinion of the court thereon.

The construction contended for by the plaintiff's counsel will not be given to the act of 1849, unless such construction is necessary and unavoidable on account of the evil consequences of the practice which would be thereby established.

The practice in equity is well settled, that, when one or more members of a partnership were bound to contribute in order to pay losses, any member who had paid his proportionate share, or offered to account and contribute, could file his bill against all the other members, requiring them to account and contribute. In such an action, all the equities between the respective members could be fairly adjusted and settled. This prevented separate actions against each member, separate accountings, and multiplicity of suits and costs.

But a construction of the statute which would authorize the present suit, would abrogate this beneficial remedy and substitute another, in which each member could be separately sued, and where, in each action, the same accounting must be gone over and very likely with different results.

The complaint does not state facts sufficient to constitute a cause of action, because it does not show that the defendant was either an original subscriber to the articles of association, or that he was a shareholder on the stock-book when the liabilities of the partnership were incurred.

The defendant possibly would have been liable to creditors of the partnership, whether the debts had been incurred before or after the defendant became a partner. But the partners had agreed, each with all the others, that, as between themselves, "the assignee of any share should be subject to liabilities accruing from and after the date of the assignment;" and "an assignment, by any member of the association, of

the whole, or any number of the shares of the company, would not discharge him from any liability arising previous to the date of such transfer upon the books of the company." The original share, in whosesoever hands it might be, was also made liable, and might be sold for the indebtedness of the company; but the transferee, after an indebtedness had accrued, was not made personally liable for such indebtedness. As between the copartners, the defendant is, therefore, only personally liable, if at all, for an indebtedness that arose subsequent to his becoming a shareholder.

Assuming that the articles of association authorized the president of the company to maintain an action to recover an assessment for losses, such an agreement is insufficient; for the right to sue depends upon the law, and not upon the arrangement of private individuals.

The law does not permit parties to determine according to their own will by whom actions shall be brought; they must be brought by those in whom the legal or equitable interest is vested, or else they must be authorized by statute. In *Cross* v. *Jackson* (5 Hill, 479), and in *Townsend* v. *Goewey* (19 Wend., 424), cited below, the agreement was made with the trustees, by whom the action was brought; and it was expressly held in the former, that, in the absence of such an agreement, the action must have been brought in the names of the original trustees for the time being.

There is nothing in the articles of copartnership that authorized the maintenance of this action. The agreement upon which the action was brought, if made by the defendant at all, was made with all the other associates (art. 3), and would therefore require the action to be brought by all the associates, except the defendant; whereas, the nominal plaintiff here represents all the associates, including the defendant.

The provision in article 3, authorizing the directors to prosecute for an unpaid assessment, does not help the plaintiff, for this suit is not by the directors. And the agreement was not made with the directors or the president, or to pay

Bray *v.* Farwell.

the assessments to the plaintiff; but it was made with the other associates.

The point that, conceding that this action could not be maintained as an action at law, still the complaint is good regarded as a bill in equity, is not well taken.

Assuming, according to the views of plaintiff's counsel, that no accounting is necessary, then the demand is purely a legal demand. It has not a single element of equity in it, and a bill in equity, under the former system, stating the same facts that are stated in this complaint, would have been demurable for want of equity.

Assuming that the suit involves the taking of an account, and is, therefore, of equitable cognizance, it is clear that no such suit can be maintained in the name of the president, under the statute of 1849. A man can no more sue himself in equity than at law. Besides, the statute has no application to such a suit, which can only be brought by one of the partners, individually, against the others, individually; all the partners, individually, being brought before the court, either as plaintiffs or defendants.

Between actions at law, by or against a copartnership, and suits in equity between the members of a copar` `` `ship, there is always this distinction, viz.: that the o`` `` of the former is to establish some right, as between t`` `opartnership, *i. e.,* all of the members of it, and a third person, while the object of the latter is to ascertain and establish the rights of the members of the copartnership as such between themselves, upon the theory that the concern is to be dissolved, its debts paid, and its assets divided. A court of law can seldom, if ever, take cognizance of a question arising between the members of a firm, as such; and a court of equity, at least in the common case, has nothing to do with the rights of the firm, taken collectively; for the object of an accounting in equity is not to ascertain whether the partners are debtors or creditors of the firm (which is a commercial and not a legal phrase), but what are the rights of the partners, individually, in respect to the partnership concerns.

There is a third class of cases (of which the present action is an example), in which the object is to establish some particular right between the firm, taken collectively, and one of its members; and for such cases our law furnishes no remedy, for the reason that it does not recognize a firm as an independent personality, distinct from the members composing it. (See Lindley on Partnership, 1st ed., p. 163, *et seq.*; 2d ed., pp. 208, 209.)

Hence, every attempt to afford a remedy in such cases, is met by the insuperable difficulty that the same person is both plaintiff and defendant (both debtor and creditor), and this difficulty is as insuperable in equity as at law. Indeed, there could not be a greater fallacy than to suppose that such a case falls specially within the province of a court of equity. The only difficulty with a court of law arises from its not being able to recognize the personality of the firm, and this is a difficulty which equity cannot reach. Remove this difficulty by statute and the case falls at once into the ordinary routine of legal remedies. It is only by taking an account and adjusting all the rights of the members *inter se* that a court of equity can afford any remedy in such a case; and for that purpose it must have all the members before it individually. "No suit in equity is maintainable against one partner by another with respect to a matter in which the firm is interested without bringing all the members thereof before the court." (Lindley, p. 718, 1st ed; 857, 2d ed.)

The case of *Cole* v. *Reynolds* (18 N. Y., 74), cited below, is not in point, the common partner there not having been both plaintiff and defendant, and the case itself is open to so much doubt that it ought not to be considered as an authority except for a case which cannot be distinguished from it. (See criticism on the case in the October Law Review for 1870, p. 47.)

The position that defendant should have raised his objection to the complaint by demurrer, is not well taken.

The defendant's motion was not grounded upon a defect of parties. His position is, that the action cannot be main-

tained, either with or without additional parties. Not one of the objections taken by him can be removed by bringing in other parties.

The plaintiff's point below, that the answer does not show that an account is required to be taken, is immaterial. It appears upon the face of the complaint that the partnership has failed, and is being wound up, and that the assessments are not for the purpose of continuing the business, but to pay losses, and without an account the plaintiffs can establish no right to recover; and an account cannot be taken in an action brought in the name of the president.

The position that Edward P. Bray was the trustee of an express trust, and as such was authorized to sue, cannot be maintained.

As to Edward P. Bray being expressly authorized by statute to sue, that is merely saying that the action is brought under the authority of the act of 1849; he being merely a nominal plaintiff, and all the associates being the real plaintiffs.

As to his being a trustee of an express trust, he does not sue in that character; but waiving that consideration, how is he trustee of an express trust or of any trust? A trustee is a person in whom the legal title to property is vested for the benefit of others; and in case of a contract, he must be the person with whom the contract was made, or to whom it has been assigned. In this case the contract sued on, if made at all, was made with all the members of the association, except the defendant; and they, therefore, if anybody, are the trustees. The provisions referred to in the articles in regard to the directors, if they establish anything (which, it is conceived, they do not as to the present action), establish that the directors are the trustees, in whose name the action should be brought. As to the provision that all actions shall be brought in the name of the president, it is wholly inoperative for the purposes of this action. "It is not competent for partners to establish, even as amongst themselves, a rule that some officers, e. g., the treasurer or secretary of the firm for

the time being, shall, as it were, represent the firm, and sue and be sued on its behalf accordingly. Consistently with the established law, effect cannot be given to such a rule, and it is simply nugatory." (Lindley on Partnership, 1st ed., p. 721; 2d ed., p. 860.)

The president claims to sue as trustee for the creditors, to obtain funds to pay the debts, but the creditors themselves cannot sue until after they have obtained judgment and execution unsatisfied against the association. (3 R. S., 5th ed., p. 777, § 125.) That section prohibits such suit.

This being so, the president cannot sue as trustee for the creditors without the creditors first obtaining judgment, and for this reason the complaint does not state a cause of action.

INGRAHAM, P. J. Upon the trial of this cause, the complaint was dismissed by the referee upon the ground that the complaint did not state a cause of action.

The supposed defect was, that the defendant was one of the associates, and could not, therefore, be sued, because he was to be considered as holding the position of a partner, and could not be sued for a liability to the association.

By the third article of the association, it is provided that the board of directors may prosecute and recover, in an action at law, any and every installment upon the share, and also any and every assessment. This was an agreement that partners might make even in a common partnership, and when made would estop a partner from taking the objection which was made to this action.

The statute of 1849, provides that all suits for joint stock associations may be brought in the name of the president, and shall have the same effect as if brought in the name of all the associates. With the statutory provisions made in regard to these associations, it can scarcely be proper now to consider them as mere partnerships possessing all the rights and subject to the liabilities of partners. On the contrary, so many corporate powers are conferred by the various statutes relating thereto, that it might rather be said, that except-

ing in the liability for the indebtedness of the association they possessed corporate powers. In the case of *Waterbury* v. *The Merchant's Union Express Co.* (50 Barbour's Rep., 160), this subject was fully examined in the Special Term, and the various corporate powers possessed by them are enumerated, and it was held that in controversies between a shareholder and the association, courts must follow the analogies afforded by the laws applicable to corporations rather than those applicable to partners. It could not have been the intent of the legislature, after conferring so many corporate powers on these associations to leave them in a position, in which, whenever any associate had a claim against the association, or was indebted thereto, that resort must be had for its collection to a proceeding to dissolve the association, in the same manner as a common partnership.

On the contrary, I am of the opinion that under the articles of association, and the statute, an action may be maintained against an associate to recover an indebtedness due from him on his stock, as for an assessment.

The reasons are very fully stated in *Waterbury* v. *The Express Co.*, above cited, and need not be repeated here.

The judgment should be reversed and a new trial ordered, costs to abide the event.